**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| AMCO INSURANCE COMPANY,<br><br>　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>INSPIRED TECHNOLOGIES, INC.,<br><br>　　Defendant/Counterclaimant. | Civil No. 08-5748 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Thomas E. Peterson, **PETERSON & HEKTNER**, 7831 Glenroy Road, Suite 145, Minneapolis, MN 55439, for plaintiff.

Tiffany A. Blofield, Michael J. Rothman, & Aimee D. Dayhoff, **WINTHROP & WEINSTINE, P.A.**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629, for defendant.

Plaintiff AMCO Insurance Company ("AMCO"), filed a complaint against defendant Inspired Technologies, Inc. ("ITI"), seeking a declaration from this Court that AMCO does not have a duty to defend or indemnify ITI in ITI's litigation with 3M Company ("3M"). The case is now before the Court on AMCO's motion for summary judgment. For the reasons discussed below, the Court grants AMCO's motion.

**BACKGROUND**

AMCO issued ITI a comprehensive general liability insurance policy (the "Policy"), which provided coverage for "Advertising and Personal Injury Liability." (Petersen Aff., Ex. A, Docket No. 23.) In November 2007, ITI began marketing a new

painter's tape, "Frog Tape," which competed with other painter's tapes in the marketplace, including tapes manufactured by 3M. Soon after ITI began marketing Frog Tape, 3M sent "cease and desist" letters to ITI, complaining that ITI's advertising for Frog Tape was false and misleading. (*Id.*, Ex. B.) By December 2007, ITI had retained the law firm of Winthrop & Weinstine ("WW") for the dispute with 3M. (*Id.*, Ex. C.) ITI asserts that on January 9, 2008, it notified AMCO Insurance Agent Brad Ness that 3M had a potential claim against ITI. (Wagner Decl. ¶¶ 1, 3, Docket No. 32.)

On April 16, 2008, 3M filed a lawsuit against ITI, alleging that ITI violated federal unfair competition laws under the Lanham Act, 15 U.S.C. § 1125(a), and state unfair competition laws under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44. (3M Compl., Petersen Aff., Ex. D, Docket No. 23.) 3M claims that "ITI's advertising purporting to depict results from use of 3M Tape is false, misleading, and deceptive" in five different ways. (*Id.* ¶ 12.) The first two factual allegations describe ITI's use of an "Actual Photo" of 3M Tape in marketing brochures and product packaging for Frog Tape:

>   (a)   ITI's marketing brochures are false, misleading, and deceptive because, among other reasons, the purported "Actual Photo" of 3M Tape does not in fact depict an actual photo but instead has been manipulated in a false and deceptive manner in order to depict 3M Tape in an unfavorable way.
>
>   (b)   ITI's product packaging is false, misleading, and deceptive because the purported "Actual Photo" of 3M Tape is misrepresented in order to depict 3M Tape in a manner that is contrary to its typical use and effectiveness.

(*Id.* ¶ 12(a)-(b).) The last three factual allegations attack ITI's testing and demonstration of 3M Tape in video, internet, and comparative advertising for Frog Tape:

> (c) ITI's purported depictions of 3M Tape in print and video advertising do not accurately depict the performance of 3M Tape under conditions similar to typical usage in the marketplace or under any test protocol sufficiently reliable or scientific to support ITI's claims.
>
> (d) ITI has displayed videos at the 2007 Hardware Show and thereafter on its website, generally purporting to demonstrate poor performance by 3M Tape by, for example, depicting three strips of painter's tape placed side-by-side with the representation that the same pressure is applied to Frog Tape and 3M Tape. The statement is false and misleading because in fact the same pressure is not applied to all depicted tapes.
>
> (e) ITI's product packaging and comparative advertising campaign are false and misleading because they claim that poor performance of 3M Tape is proved through purportedly valid testing, when in fact the ITI test conditions are not sufficiently reliable or comparable to conditions of typical use to allow one to conclude with reasonable scientific certainty that they establish the results depicted. Among the varied respects in which ITI's testing deviates from conditions representative of typical applications include its use of application techniques different from those used in typical applications, its use of uncommon or limited purpose paints such as very low-viscosity paints, and its depictions of paint line results from application of tape to atypical surfaces.

(*Id.* ¶ 12(c)-(d).)

On May 9, 2008, ITI president and owner David Wagner notified AMCO in writing that 3M had filed the complaint and, pursuant to the Policy, ITI tendered the defense and indemnity of 3M's claims to AMCO. (Petersen Aff., Ex. G, Docket No. 23.) In the same letter, Wagner requested that AMCO consent to WW's continued representation of ITI in the 3M litigation. (*Id.*) AMCO claims that it sent a letter to ITI on May 27, 2008, acknowledging receipt of the 3M complaint and indicating that it had retained Robert Kuderer of Johnson & Condon to appear on ITI's behalf. (Petersen Aff.,

Ex. H, Docket No. 23.) ITI, however, contends that it did not immediately receive the letter or any indication from AMCO that AMCO would defend the lawsuit with or without reservation of rights.[1] (Wagner Decl. ¶ 5, Docket No. 32.)

On June 10, 2008, Kuderer wrote to WW and requested ITI's 3M litigation file, including "pleadings, court orders, Rule 26(a) Disclosures, and correspondence" related to the 3M suit. (Petersen Aff., Ex. J, Docket No. 23.) On June 13, Wagner sent a letter to AMCO agent Ness referencing Kuderer's request and discussing other issues relating to Kuderer's potential representation of ITI. (Wagner Decl. ¶ 6 & Ex. B, Docket No. 32.) In particular, Wagner expressed concern that (1) Kuderer did not provide ITI with a copy of his June 10 letter to WW; (2) AMCO did not consult Wagner about the retention of Kuderer and did not inform Wagner that it had accepted the tender of defense; and (3) Kuderer's law firm did not have significant experience in intellectual property litigation. (Wagner Decl., Ex. B, Docket No. 32.) Kuderer continued to try to acquire ITI's files from WW, but WW refused pending AMCO's response to the concerns ITI raised in the June 13 letter. (Blofield Decl. ¶ 9, Docket No. 30; Krummen Decl. ¶ 4, Docket No. 31.)

From the time of Kuderer's first request on June 10 until approximately mid-August, neither WW nor ITI provided Kuderer or AMCO with any relevant documents. (Petersen Aff., Exs. K, L, M, Docket No. 23.) During that time, WW and ITI continued to express concern to ITI about AMCO's "lack of responsiveness" to ITI's June 13 letter,

---

[1] ITI claims that it finally received AMCO's unsigned letter on July 17, 2008.

although AMCO maintains that it did not receive that letter. (*See* Krummen Decl. ¶ 8, Docket No. 31, Ex. 3.)

On August 8, 2008, ITI, WW, and AMCO representatives met to discuss the defense of the 3M suit. (Krummen Decl. ¶ 10, Docket No. 31; Wagner Decl. ¶ 8, Docket No. 32.) At that meeting, AMCO offered to reimburse ITI – at Kuderer's fee structure – for the attorney's fees ITI had paid to WW up to that date. AMCO also assured ITI that it would respond to Wagner's June 13 letter. On August 18, ITI received a letter from AMCO, which stated that AMCO would pay WW's attorney's fees from May 22, 2008, to the present at Johnson & Condon's billing rate; that it would pay for ITI's defense through Johnson & Condon (Kuderer); that if ITI rejected Kuderer as defense counsel and retained WW, ITI "will be responsible for all expenses incurred"; and that "AMCO['s] . . . acceptance of [ITI's'] defense has **to date been without reservation of rights**." (Wagner Decl., Ex. E, Docket No. 32 (emphasis added).) AMCO also noted its concerns that Kuderer had not received ITI's full cooperation in preparation for the defense of the 3M suit. (*Id.*)

On August 18, 2008, 3M proposed a settlement to ITI, which required ITI to cease various aspects of its advertising practices and to pay 3M $500,000. (Krummen Decl. ¶ 12 & Ex. 6, Docket No. 31.) WW thereafter agreed to forward materials to AMCO that would be necessary for AMCO to consider whether to settle with 3M. (Petersen Aff., Exs. Q, R, Docket No. 23.) AMCO asserts, however, that ITI and WW did not permit Kuderer to review all of the pleadings and documents related to the case.

On October 1, 2008, AMCO sent a letter to ITI stating that AMCO had nearly completed its review of the documents provided to it in anticipation of the settlement conference scheduled for October 7, 2008. AMCO informed ITI that "there may be applicable exclusions contained in [the Policy] that may apply to exclude coverage for the allegations and claims for relief leveled by 3M against ITI." (Wagner Decl., Ex. I, Docket No. 32.) After reciting the potentially applicable exclusions, AMCO's letter continued: "This letter is written to notify you that AMCO Insurance Company is reserving all of its rights and defenses under the terms and provisions of the policy involved herein including, but not limited to, those outlined in this letter." (*Id.*)

ITI eventually settled with 3M, with AMCO agreeing to pay 3M a settlement figure on ITI's behalf. On October 16, 2008, AMCO brought this declaratory judgment action claiming that AMCO had no duty to defend or indemnify ITI, and that 3M's claims fell within the scope of exclusionary provisions of Policy.[2] The action addresses only whether AMCO is responsible for paying WW's attorney's fees. On March 30, 2009, AMCO filed a motion for summary judgment.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

---

[2] ITI answered and counterclaimed for, *inter alia*, declaratory relief and breach of contract. (Answer and Counterclaim, Docket No. 4.)

law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXCLUSIONS FROM COVERAGE UNDER THE POLICY

AMCO argues that the Policy's Advertising and Personal Injury Liability provision excludes from coverage the claims brought by 3M against ITI, and argues that AMCO therefore did not have a duty to defend against those claims. The Court first considers the scope of the Policy's exclusions as they relate to 3M's claims.

Under Minnesota law, the interpretation of insurance contracts, including duty-to-defend provisions, is a question of law for the Court. *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). "An insure[r]'s duty to defend extends to every claim that arguably falls within the scope of coverage[, and] the duty to defend one claim creates a duty to defend all claims." *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 576 (Minn. 2009) (internal quotation marks omitted; second alteration in original). The insured has the initial burden of establishing a prima facie case of coverage. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 311 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 918-19

(Minn. 2009). The burden then shifts to the insurer to "establish[] that all parts of the cause of action fall clearly outside the scope of coverage." *Wozniak Travel*, 762 N.W.2d at 576 (internal quotation marks omitted). "To determine whether a duty exists, the allegations in the underlying complaint and the surrounding facts will be compared with the relevant language in the insurance policy." *Id.*; *see also Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994) ("In addition to looking at the complaint, the insurer can look to facts outside the complaint to determine whether coverage exists.").

AMCO assumes for the purposes of this motion that the allegations in the 3M complaint fall within the "Advertising and Personal Injury Liability" coverage of the Policy. AMCO argues, however, that it is entitled to summary judgment because 3M's claims "fall within the purview of exclusionary clauses which condition that coverage." (Mem. in Supp. of Mot. for Summ. J. at 6, Docket No. 21.) AMCO cites two exclusionary clauses in the Policy: the "Knowledge of Falsity" exclusion and the "Defects or Errors in Testing" Exclusion. Specifically, AMCO contends that the "Knowledge of Falsity" provision excludes from coverage 3M's first two allegations – those relating to the "Actual Photo" in Frog Tape marketing brochures and product packaging. AMCO contends that the "Defects or Errors in Testing" provision excludes from coverage 3M's last three allegations – those relating to the testing and demonstration of 3M Tape and Frog Tape. The Court considers the exclusionary provisions and each related allegation in the complaint in turn.

## A. The "Knowledge of Falsity" Exclusion

The Policy's "Knowledge of Falsity" provision provides that:

This insurance, including any duty we have to defend "suits," does not apply to:

(a) "Personal and Advertising Injury":

1. Caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

2. Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity[.]

(Policy at 10, Peterson Aff., Ex. A, Docket No. 23.)

In the first two factual allegations, 3M describes what ITI claimed was an "actual photo" of 3M tape used in ITI's Frog Tape marketing brochures and product packaging. 3M claimed that the "actual photograph" had "been manipulated in a false and deceptive manner" to depict 3M tape in an unfavorable way and to misrepresent the effectiveness of 3M's tape. (3M Compl. ¶ 12(a)-(b), Peterson Aff., Ex. D., Docket No. 23.) In its answers to interrogatories, 3M detailed those allegations, stating, "At least some of ITI's 'Actual Photos' cannot be actual photos but rather are manipulated images. . . . Rather than showing an actual photograph of a single piece of blue or tan tape . . . the picture depicts a smaller portion of each tape – such portion itself a result of manipulated testing – that is then repeated three times." (3M's Answer to Interrog. 14, Peterson Aff., Ex. T, Docket No. 23.) 3M also stated: "It is apparent that, rather than use an 'Actual Photo' of 3M tape, ITI manipulated a tape image by, among other things, replicating a photo to

create a repeating pattern. **Such replication could only occur through intent to deceive**." (3M's Answer to Interrog. 19, Peterson Aff., Ex. U, Docket No. 23 (emphasis added).)

The Court agrees with AMCO that "[i]t would defy logic to interpret th[e complaint's] language as alleging anything other than [that] ITI acted falsely and with knowledge of that falsity." (Mem. in Supp. of Mot. for Summ. J. at 9, Docket No. 21 (citing *Callas Enters., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952, 957 (8th Cir. 1999)).) That is, in the first two factual allegations in the complaint and in the answers to ITI's interrogatories about those allegations, 3M clearly asserts that ITI intentionally altered, or "manipulated," photos of 3M Tape in an attempt to deceive consumers about Frog Tape's comparative merits. Accordingly, 3M's first two factual allegations fall squarely within the Policy's knowledge of falsity exclusion.

ITI responds to AMCO's motion by arguing that (1) 3M's complaint does not allege that ITI knew its claims were false; (2) some of 3M's claims fall outside the scope of the knowledge of falsity exclusion; and (3) the Court should adopt a rule that knowledge of falsity exclusions in insurance contracts should only be applied to claims for defamation or invasion of privacy. The Court addresses each objection in turn.

First, ITI argues that 3M's first factual allegation does not allege that ITI had "knowledge" that the Frog Tape advertising claims were false or that the advertising would violate 3M's rights. In that factual allegation, 3M pleads that "the purported 'Actual Photo' of 3M Tape does not in fact depict an actual photo but instead **has been manipulated** in a false and deceptive manner in order to depict 3M Tape in an

unfavorable way." (3M's Compl. ¶ 12(a), Petersen Aff., Ex. D, Docket No. 23 (emphasis added).) 3M further explains in its answers to ITI's interrogatories that ITI manipulated the photo to

> create a repeating pattern. . . . [and s]uch replication could only occur through **intent to deceive**. Any claim that ITI has not intended its depictions of the alleged performance of 3M tape to harm the brand image of 3M tapes is not plausible, and 3M does not expect ITI to maintain so implausible a position. By presenting manipulated images of 3M tape, ITI intended to deceive and confuse, and did deceive and confuse, potential customers for 3M tapes.

(3M's Answer to Interrog. 19, Peterson Aff., Ex. U, Docket No. 23 (emphasis added).)

Although the allegations in 3M's complaint are adequate to establish that the claims fall within the Policy's "Knowledge of Falsity" exclusion, the answers to interrogatories clearly demonstrate that 3M alleged that ITI had knowledge of the falsity of its advertising claims and that ITI knew such claims would violate 3M's rights. Therefore, AMCO does not have a duty to defend against those claims.[3] *See Haarstad*, 517 N.W.2d at 584 ("In addition to looking at the complaint, the insurer can look to facts outside the complaint to determine whether coverage exists.").

Second, ITI argues that the 3M complaint "contains alternative allegations of false statements that were intentionally made **or negligently made or made with reckless**

---

[3] The Court also notes that 3M's complaint also seeks enhanced profits and attorney's fees under 15 U.S.C. § 1117(a), alleging that ITI "willfully engaged in false advertising knowing it to be deceptive." (3M Compl. ¶ 17, Petersen Aff., Ex. D, Docket No. 23.) That allegation is particularly relevant to the questions of knowledge and intent, as the Lanham Act permits an award of attorney's fees and profits only in "exceptional cases," such as where the violation is "willful and deliberate." *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 716 (8th Cir. 1980).

**disregard,"** and that AMCO has a duty to defend because it cannot show that all claims asserted in the 3M complaint "'**clearly** fall outside of the coverage.'" (Mem. in Opp'n to Mot. for Summ. J. at 20, Docket No. 29 (citing *Cincinnati Ins. Co. v. Pro Enters., Inc.*, 394 F. Supp. 2d 1127, 1132 (D.S.D. 2005)) (first emphasis added).) ITI also quotes *Amerisure Insurance Co. v. Laserage Technology Corp.* for the proposition that "a violation of the Lanham Act, under which persons can be found liable **without regard to intent**, would not be excluded" under an insurance contract. 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998) (emphasis added). ITI's argument fails for two reasons. First, AMCO does not make any "alternative" allegations that ITI acted negligently or recklessly. Rather, 3M's allegations make explicitly clear that ITI's actions "could only occur through intent to deceive." (3M's Answer to Interrog. 19, Peterson Aff., Ex. U, Docket No. 23.) Second, the fact that the Lanham Act provides for causes of action where intent is not a necessary element is irrelevant to this analysis. Here, 3M only alleges claims relating to ITI's actual intent. In *Laserage*, the court concluded that coverage was not excluded because certain paragraphs of the complaint did not plead defendants' knowledge of falsity. *Laserage Tech. Corp.*, 2 F. Supp. 2d at 304. As discussed *supra*, however, 3M alleges only that ITI knew of the falsity of its advertising and actually intended to deceive consumers.

Finally, ITI suggests that the "knowledge of falsity" exclusion applies only to claims for libel, slander, and invasion of privacy, as opposed to all claims for advertising injuries. *See Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1341 (S.D. Fla. 2001). In these circumstances, the Court declines to so

limit the exclusionary provision. ITI does not identify any basis in Minnesota law for such a narrow reading of "knowledge of falsity" exclusions in insurance contracts.[4] *See, e.g.*, *Callas*, 193 F.3d at 954-55, 956 (applying Minnesota law and holding that non-libel claims relating to "bait-and-switch" tactics were excluded under the "knowledge of falsity" provision in an insurer's policy). Further, the exclusion's scope is not limited to "libel, slander, or invasion of privacy," but instead broadly applies to suits "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (Policy at 10, Peterson Aff., Ex. A, Docket No. 23.) Although courts strictly construe exclusionary provisions, such provisions "are as much a part of the insurance contract as any other part, and must be given the same consideration in determining what the policy covers." *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). The Court is not persuaded that it should limit the knowledge of falsity exclusion to defamation and invasion of privacy claims.

In sum, the Court finds that the first two factual allegations as pled in 3M's complaint fall within the Policy's knowledge of falsity exclusionary clause. The Court thus turns to a consideration of whether the Policy excluded 3M's remaining claims from

---

[4] Notably, ITI's cited cases from the Southern District of Florida and the Fourth Circuit do not definitively hold that "knowledge of falsity" exclusions apply only to libel, slander, or invasion of privacy claims. *See Adolfo*, 165 F. Supp. 2d at 1341 ("It is questionable in the first instance . . . whether [the knowledge of falsity] exclusion applies to all advertising injuries, or only to libel, slander, and invasion of privacy; it has been suggested that this exclusion is more logically relevant to the latter."); *see also State Auto. Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 261 n.15 (4th Cir. 2003) (quoting the same).

coverage. *Cf. Wozniak Travel, Inc.*, 762 N.W.2d at 576 ("[T]he duty to defend one claim creates a duty to defend all claims." (internal quotation marks omitted)).

## B. The "Defects or Errors in Testing" Exclusion

AMCO argues that the final three claims in 3M's complaint fall under the Policy's "deficiency of testing" exclusion. Under that provision, AMCO has no duty to defend against suits for personal or advertising injury arising out of:

a)  An error, omission, defect, or deficiency

   (i)  In any test performed, or any evaluation, consultation or advice given by or on behalf of you are any insured; or

   (ii) In experimental data or the insured's interpretation of that data.

b)  The reporting of or reliance upon any such test, evaluation, consultation or advice.

(Policy at 12-13, Peterson Aff., Ex. A, Docket No. 23.)

The final three factual claims in 3M's complaint are premised on ITI's testing and demonstration of 3M Tape. 3M claimed that ITI's test data was deficient because (1) the data "did not accurately depict the performance of 3M Tape under conditions similar to typical usage in the marketplace or under any test protocol sufficiently reliable or scientific to support ITI's claims," (3M Compl. ¶ 12(c), Peterson Aff., Ex. D, Docket No. 23); (2) videos displayed at a hardware show, purporting to demonstrate 3M Tape's poor performance, were "false and misleading because in fact the same pressure [was] not applied to all depicted tapes," (*id.* ¶ 12(d)); and (3) "ITI's test conditions are not sufficiently reliable or comparable to conditions of typical use to allow one to conclude

with reasonable scientific certainty that they establish the results depicted . . . [including ITI's] use of application techniques different than those used in typical applications" and the use of uncommon paints or use of depictions of paint line results from application of tape to atypical surfaces, (*id.* ¶ 12(e)).

ITI responds by arguing the merits of the 3M's alleged claims. That is, instead of arguing that 3M's claims are not excluded under the Policy, ITI argues that there were "no defects or errors in the demonstrations or testing." (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 25-26, Docket No. 29.) However, the merits of ITI's potential defenses to 3M's claims are irrelevant to the Court's analysis; the question of whether there is a duty to defend is determined by the **allegations in the complaint**. *See Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993). The Policy excludes 3M's claims relating to ITI's deficient testing and representations based on that testing.

In sum, the Court concludes that the Policy's "knowledge of falsity" and "defects or errors in testing" provisions exclude all of 3M's claims from coverage, and AMCO therefore had no duty to defend against those claims.

### III. ESTOPPEL

ITI argues that to the extent the Policy excludes 3M's claims, AMCO should be estopped from asserting that it had no duty to defend against those claims. Specifically, ITI asserts that in AMCO's August 13 letter to ITI, "AMCO agreed to coverage without reservations," (Wagner Decl., Ex. C, Docket No. 32), and therefore AMCO may not now claim that it has no duty to defend ITI.

In *Oehme v. Johnson*, the Minnesota Supreme Court held:

> When the insurer undertakes the control of the defense of an action brought by the injured person against the insured, with full information of the character of the action, and **without any reservation or notice to the insured that it did not intend to waive such objection**, it will be deemed to have waived the objection that the liability was not within the terms of the insurance policy.

231 N.W. 817, 821 (Minn. 1930) (internal quotation marks omitted).

Fifty years later, in *Shannon v. Great American Insurance Co.*, the Minnesota Supreme Court implicitly limited *Oehme*, holding that "[t]he doctrine of estoppel may not be used to enlarge the coverage of an insurance policy. . . . [I]t would be wholly improper to impose coverage liability upon an insurer for a risk not specifically undertaken and for which no consideration has been paid." 276 N.W.2d 77, 78 (Minn. 1979); *see also Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1010 (8th Cir. 2006); *Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co.*, 187 F.3d 871, 877 (8th Cir. 1999) (quoting *Shannon*). In *Transamerica Insurance Co. v. International Broadcasting Corp.*, however, the Eighth Circuit stated that under Minnesota law, the doctrine of equitable estoppel could apply to create coverage if the claimant could establish, *inter alia*, that it was prejudiced by an insurer's actions. 94 F.3d 1204, 1208-09 (8th Cir. 1996); *see also Transam. Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn. 1978).

In *Minnesota Commercial Railway Co. v. General Star Indemnity Co.*, the Eighth Circuit recognized "a limited exception to *Shannon*, which permits the use of estoppel by an insured to actually create coverage **where the insurer controls the litigation by the insured**." 408 F.3d 1061, 1063 (8th Cir. 2005) (emphasis added). The specific policy

behind invoking equitable estoppel in such an instance, according to the Eighth Circuit, "is to prevent an insured from being left in the untenable position of having no voice in the litigation where the insurer is defending its own interests, not those of the insured." *Id.* The Eighth Circuit noted that "[a]ssumption-of-defense estoppel is narrowly applied . . . and is not applicable . . . where the insurer gives a notice of a reservation of rights or where the insurer does not conduct the defense with knowledge of the relevant facts." *Id.* at 1064 (citations omitted).

AMCO argues that estoppel does not apply in this case because (1) it is "undisputed" that AMCO reserved its rights; and (2) AMCO never assumed total control over ITI's defense because ITI and WW did not provide AMCO with a significant portion of relevant litigation documents until after 3M made a settlement offer.

The Court concludes that AMCO is not estopped from asserting that it had no duty to defend ITI in the 3M suit. First, ITI cannot argue that AMCO controlled the 3M litigation at any time leading up to the settlement. Indeed, ITI's recitation of the facts demonstrates that WW was in control of the 3M litigation while ITI waited for a response to its June 13 letter. Second, even if ITI could demonstrate that AMCO was in "control of the litigation," ITI did not give Kuderer, the counsel retained by AMCO for ITI's defense, access to litigation documents until 3M made a settlement offer. Thus, Kuderer could not have conducted the defense with knowledge of the relevant facts in the case. AMCO also explicitly reserved its rights in a letter to ITI dated October 1, 2008.

In failing to establish that it is entitled to assert the doctrine of equitable estoppel under *Shannon*, *Transamerica*, and *General Star*, ITI must argue that AMCO's

reservation of rights was late or incomplete. As an initial matter, the record does not reflect that AMCO affirmatively signaled to ITI that it would proceed with ITI's defense without a reservation of rights. Instead, AMCO's August 13 letter stated that "AMCO['s] . . . acceptance of [ITI's'] defense has **to date been without reservation of rights**." (Wagner Decl., Ex. E, Docket No. 32 (emphasis added).) Moreover, ITI has not identified case law supporting its argument that a late or incomplete reservation of rights, where the insurer has not assumed total control of the defense, supports a claim for estoppel. In fact, the Eight Circuit has held that "absent prejudice to the insured, a late reservation of rights will not result in a waiver of the insurer's right to assert a policy exclusion." *Nw. Airlines v. Fed. Ins. Co.*, 32 F.3d 349, 356 (8th Cir. 1994) (citing *St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 47 (Minn. 1982)). ITI has not demonstrated that it was prejudiced by AMCO's October 1 reservation of rights.

In sum, the Court concludes as a matter of law that the Policy's exclusions apply and therefore AMCO had no duty to defend. Moreover, it is undisputed that AMCO did not exercise complete or exclusive control over ITI's defense of 3M's claims, and therefore ITI may not assert equitable estoppel.[5] Accordingly, the Court grants AMCO's motion for summary judgment

---

[5] ITI argues at length that the "Greater Concern" rule permitted ITI to select its own counsel in litigating the claims brought by 3M. Because the Court finds that the Policy excluded those claims from coverage, the Court need not reach the question of which party was entitled to select counsel in these circumstances.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that AMCO Insurance Company's Motion for Summary Judgment [Docket No. 20] is **GRANTED.**


DATED: February 19, 2010                 ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                   JOHN R. TUNHEIM
                                                    United States District Judge