# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| AMCO INSURANCE COMPANY, | Civil No. 08-5748 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| | **AND ORDER** |
| INSPIRED TECHNOLOGIES, INC., | |
| Defendant. | |

Thomas E. Peterson, **THE LAW OFFICES OF THOMAS E. PETERSON, P.A.**, 7831 Glenroy Road, Suite 145, Minneapolis, MN 55439, for plaintiff;

Tiffany A. Blofield and Craig S. Krummen, **WINTHROP & WEINSTINE, P.A.**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for defendant.

This insurance coverage dispute is before the Court after reversal and remand by the Eighth Circuit. *AMCO Ins. Co. v. Inspired Techs., Inc.*, 648 F.3d 875 (8th Cir. 2011) ("*AMCO II*"). In 2008, Plaintiff AMCO Insurance Company ("AMCO") filed a complaint against Defendant Inspired Technologies, Inc. ("ITI") seeking a declaration that AMCO had no duty to defend or indemnify ITI in ITI's litigation with 3M Company ("3M") concerning a rival product. In 2010, this Court granted AMCO's summary judgment motion finding that (1) some of the allegations in the underlying complaint fell within the "knowledge of falsity" exclusionary clause; and (2) the remaining allegations in the underlying complaint fell within the "defects or errors in testing" exclusionary cause. *AMCO Ins. Co. v. Inspired Techs., Inc.*, 692 F. Supp. 2d 1060 (D. Minn. 2010)

("*AMCO I*").   The Eighth Circuit reversed the decision, holding that not all of the allegations in the underlying complaint fell outside the insurance policy because not all of the allegations fell within the "knowledge of falsity" exclusion.   The parties apparently did not argue the applicability of any other policy exclusions before the Eighth Circuit.

AMCO and ITI now bring cross-motions for summary judgment.   AMCO argues that it is entitled to summary judgment because all of the allegations in the underlying complaint fall within one of the exclusions of the insurance policy.   ITI contends that it is entitled to summary judgment because AMCO breached its duty to defend ITI.   The Court will grant summary judgment to AMCO because it finds that all allegations in the underlying complaint that fall outside the "knowledge of falsity" exclusion – the only provision that the Eighth Circuit addressed – fall within one of the other policy exclusions and, therefore, that AMCO had no duty to defend ITI.

## BACKGROUND

AMCO issued ITI a comprehensive general liability insurance policy (the "Policy"),[1] which provided coverage for "Advertising and Personal Injury Liability." (Petersen Aff., Mar. 30, 2009, Ex. A, Policy, Docket No. 23.)   In November 2007, ITI began marketing a new painter's tape, "Frog Tape," which competed with other painter's tapes in the marketplace, including tapes manufactured by 3M.   Soon after ITI began marketing Frog Tape, 3M sent "cease and desist" letters to ITI, complaining that ITI's advertising for Frog Tape was false and misleading.   (*Id.*, Ex. B.)   By December 2007,

---

[1] Relevant portions of this policy, including the exclusionary clauses, are contained in Appendix A.

ITI had retained the law firm of Winthrop & Weinstine to represent it in the dispute with 3M.  (*Id.*, Ex. C.)  ITI states that on January 9, 2008, it notified AMCO that 3M had a potential claim against ITI.  (Wagner Decl. ¶¶ 1, 3, Apr. 24, 2009, Docket No. 32.)

On April 16, 2008, 3M filed a lawsuit against ITI alleging that ITI violated federal unfair competition laws under the Lanham Act, 15 U.S.C. § 1125(a) and state unfair competition laws under the Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44.  (Petersen Aff., Ex. D, 3M Compl. ¶1.)  3M claimed that "ITI's advertising purporting to depict results from use of 3M Tape is false, misleading, and deceptive" in several different ways.  (*Id.* ¶¶ 12-13.)  The first two factual allegations described ITI's use of an "Actual Photo" of 3M Tape in marketing brochures and product packaging for Frog Tape:

> (a) ITI's marketing brochures are false, misleading, and deceptive because, among other reasons, the purported "Actual Photo" of 3M Tape does not in fact depict an actual photo but instead has been manipulated in a false and deceptive manner in order to depict 3M Tape in an unfavorable way.
>
> (b) ITI's product packaging is false, misleading, and deceptive because the purported "Actual Photo" of 3M Tape is misrepresented in order to depict 3M Tape in a manner that is contrary to its typical use and effectiveness.

(*Id.* ¶ 12(a)-(b).)  The next three factual allegations attacked ITI's testing and demonstration of 3M Tape in video, internet, and comparative advertising for Frog Tape:

> (c) ITI's purported depictions of 3M Tape in print and video advertising do not accurately depict the performance of 3M Tape under conditions similar to typical usage in the marketplace or under any test protocol sufficiently reliable or scientific to support ITI's claims.
>
> (d) ITI has displayed videos at the 2007 Hardware Show and thereafter on its website, generally purporting to demonstrate poor performance by 3M Tape by, for example, depicting three strips of painter's tape placed side-by-side with the representation that the same pressure is applied to Frog

Tape and 3M Tape.  The statement is false and misleading because in fact the same pressure is not applied to all depicted tapes.

(e) ITI's product packaging and comparative advertising campaign are false and misleading because they claim that poor performance of 3M Tape is proved through purportedly valid testing, when in fact the ITI test conditions are not sufficiently reliable or comparable to conditions of typical use to allow one to conclude with reasonable scientific certainty that they establish the results depicted.  Among the varied respects in which ITI's testing deviates from conditions representative of typical applications include its use of application techniques different from those used in typical applications, its use of uncommon or limited purpose paints such as very low-viscosity paints, and its depictions of paint line results from application of tape to atypical surfaces.

(*Id.* ¶ 12(c)-(e).)   3M also asserted that "ITI's product packaging and comparative advertising campaign are false and misleading in other respects as well, in that ITI has made other claims about the companies' tapes that are incorrect and unsubstantiated."

(*Id.* ¶ 13.)  In response to an interrogatory asking it to "Describe all facts supporting your allegation in paragraph 13 of your Complaint," 3M answered:

. . . ITI's advertising is false and misleading because it does not accurately depict results from typical use of 3M tape. . . . More specifically:

(a)    At least some of ITI's "Actual Photos" cannot be actual photos, but rather are manipulated images.  In particular, the picture used in the advertisements marked as Exhibits 12, 13, and 14 during ITI's Rule 30(b)(6) deposition have plainly been manipulated . . .

(b)     . . . ITI apparently uses paints, substrates, substrate treatments, and application techniques that are not representative of paints, substrate, substrate treatments, and application techniques used by purchasers of 3M tape or Frog Tape . . .

(c)    . . . ITI has presented tapes applied side-by-side and claimed that the applied pressure is the same, when in fact the pressure applied to the 3M tape is lower than the pressure applied to Frog Tape.

(d)    Despite ITI's claims that Frog Tape is "clean release," it in fact leaves a residue.

(e)     Despite ITI's claims that Frog Tape is "UV-resistant," it in fact leaves a residue behind upon removal after exposure to UV rays.

(f)     The tape widths that ITI claims for Frog Tape are overstated and thus false and misleading.

(Peterson Aff., Ex. T, 3M's Answer to Interrog. 14.)  Interrogatory 19 requested 3M to "Describe in all possible detail the basis for your claim that ITI's advertisements or demonstration resulted on consumer confusion or were intended to deceive." (Peterson Aff., Ex. U, 3M's Answer to Interrog. 19.)  3M answered:

> It is apparent that, rather than use an "actual photo" of 3M tape, ITI manipulated a tape image by, among other things, replicating a photo to create a repeating pattern.  Such replication could only occur through intent to deceive.  Any claim that ITI has not intended its depiction of the alleged performance of 3M tape to harm the brand image of 3M tapes is not plausible, and 3M does not expect ITI to maintain so implausible a position. By presenting manipulated images of 3M tape, ITI intended to deceive and confuse, and did deceive and confuse, potential customers for 3M tapes.

(*Id.*)

On December 16, 2008, ITI settled the 3M litigation.  The Court's previous action addressed whether AMCO was responsible for paying Winthrop & Weinstine's attorney's fees.  ITI now argues that because AMCO breached its duty to defend it must reimburse ITI for the costs and fees ITI incurrent in defending itself in both the 3M litigation **and** in this litigation.  AMCO again seeks a determination that it is not liable for any of ITI's costs and fees.

## ANALYSIS

## I.     STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     AMCO'S MOTION FOR SUMMARY JUDGMENT

Because the Eighth Circuit only considered the applicability of the "knowledge of falsity" exclusion and the remaining claims in the underlying complaint fall within the other exclusions, the Court will grant AMCO's motion for summary judgment and deny ITI's motion.  The Court will first address the Eighth Circuit's opinion and then examine the other policy exclusions.

### A.     Scope of the Eighth Circuit's Holding

The Eighth Circuit agreed with this Court that the "knowledge of falsity" exclusion applied to the doctoring of the "purported 'actual photos' of 3M tape" (paragraphs 12(a) and (b) of 3M's complaint).  *AMCO II*, 648 F.3d at 882.[2]  Yet, the Eighth Circuit held that this Court erred by failing to recognize that "[i]f any one claim of the 3M suit is arguably covered, AMCO must defend the whole suit."  *Id. at* 881.

---

[2] This same analysis also applies to 3M's allegation answering Interrogatory 14(a) that "At least some of ITI's 'actual photos' cannot be actual photos, but rather are manipulated images."  (3M's Answer to Interrog. 14(a).)

Specifically, the Circuit Court held that "the two interrogatory answers upon which the district court relied do not reflect that 3M alleged ITI's knowledge of falsity **as to all** the purportedly unfair advertising." *Id.* In particular, the Circuit Court noted that paragraph 12(c) and 12(e) of 3M's complaint contained conduct which might have been intentional or "merely negligent." *Id.* at 882. But the Circuit Court did not address whether the conduct 3M alleged would fall within any **other** exclusion of the Policy.[3] The Court concludes that the applicability of the other exclusions was not before the Eighth Circuit,[4]

---

[3] "Although our mandate controls all matters within its scope, a court on remand is free to revisit any issue we did not expressly or implicitly decide." *Borchers v. Comm'r of Internal Revenue*, 943 F.2d 22, 23 (8th Cir. 1991). The applicability of other exclusions was not expressly or implicitly decided by the Eighth Circuit; it simply did not address them.

[4] The notice of appeal (Docket No. 57) lists the following issues for appeal:

1. Whether the District Court erred in granting summary judgment by applying the narrow "knowledge of falsity" exclusion clause in an insurance policy to preclude coverage for a claim of unfair competition under the Lanham Act?

2. Whether the District Court erred in granting summary judgment by applying the narrow "defects or errors in testing" exclusion clause in an insurance policy to preclude coverage for claim of unfair competition under the Lanham Act?

3. Whether the District Court erred in refusing to apply the estoppel doctrine to bar Plaintiff AMCO Insurance Company from asserting that it had no duty to defend Defendant Inspired Technologies, Inc.?

Only the first of these issues appears to have been argued or briefed in front of the Eighth Circuit panel. In *AMCO II*, the Circuit Court stated,

ITI argues that the district court erred because (1) it failed to recognize that, under Minnesota law, a duty to defend all claims exists when **any one** claim arguably is covered by the policy's language; and (2) it accorded too much weight to 3M's interrogatory answers and, in so doing, disregarded the complaint's averments. In response, AMCO counters that the district court properly concluded that the knowledge-of-falsity exclusion obviated its duty to defend because 3M's interrogatory answers demonstrate that 3M actually sued ITI for intentional conduct.

(Footnote continued on next page.)

and consequently, the Court now reconsiders the potential applicability of those exclusions to 3M's claims.

### B.      Applicability of Each Exclusion

AMCO is only entitled to summary judgment if an exclusion applies to each claim in the underlying complaint. *AMCO II*, 648 F.3d at 881 ("If any part [of the cause of action] is arguably within the scope of coverage, the insurer should defend, reserving its right to contest coverage based on facts developed at trial on the merits.") (quoting *Farmers and Merchs. State Bank v. St. Paul Fire & Marine Ins. Co.*, 242 N.W.2d 840, 843 (Minn. 1976)).  The Minnesota Supreme Court has held that if "the policy contains an exclusion clause," the burden is on the insurer "to prove the applicability of the exclusion . . . ." *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 313 (Minn. 1995), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009).  "Exclusions are narrowly interpreted against the insurer." *Id.* at 314.

---------------------------------------

(Footnote continued.)

*AMCO II*, 648 F.3d at 880.  The opinion makes no mention of either party noting the applicability of any exclusion other than the "knowledge of falsity" exclusion.

In the briefing, although AMCO noted that the "district court also found that AMCO had no duty to defend the last three counts because coverage for these was excluded by the Policy's 'deficiency of testing' exclusion," in the following sentence it stated, "**ITI has not appealed that determination.**"  AMCO's Brief, 2010 WL 3576607, at *11 (emphasis added).  At no other point in its brief does AMCO mention the "deficiency of testing" exclusion. *Id.*  In its Eighth Circuit brief, ITI **only** briefed the "knowledge of falsity" exclusion; it did not address the applicability of any other exclusion.  ITI's Brief, 2010 WL 3229885, at *17.

### 1.     "Knowledge of Falsity" Exclusion

The "knowledge of falsity" exclusion excludes from coverage "Personal or Advertising injury"

> 1)     Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";
>
> 2)     Arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity;

(Peterson Aff., Ex. A.)

In paragraphs 12(a) and (b) of 3M's Complaint, 3M claimed that ITI manipulated photographs "in order to depict 3M tape in an unfavorable way" and "in a manner that is contrary to its typical use and effectiveness."   The Court concluded that such conduct could only occur "with knowledge of its falsity" because 3M asserted that manipulation of the photos "could only occur through intent to deceive."   *AMCO I*, 692 F. Supp. 2d at 1065 (quoting 3M's Answer to Interrog. 19.)   Similarly, some of the conduct alleged in paragraph 13 of 3M's Complaint also falls within the knowledge of falsity exclusion.   3M alleged that at least some of ITI's "Actual Photos" were "manipulated images" (Answer to Interrog. 14(a)); the Court found 3M alleged that manipulation of these photographs could only have occurred with knowledge of their falsity.   *See id.*   Indeed, the Eighth Circuit noted that "doctoring purported 'actual photos' of 3M Tape [is] conduct which most naturally implies intent."   *AMCO II*, 648 F.3d at 882.

However, not all of the claims alleged by 3M fall within the "knowledge of falsity" exclusion.   *See id.*   The Court will next address the applicability of the other exclusions to claims that 3M alleged violated the Lanham Act.

### 2.    "Defects or Errors in Testing" Exclusion

Under the "defects or errors in testing" exclusion, AMCO has no duty to defend

suits arising from

a)    An error, omission, defect or deficiency:

    i)    in any test performed, or any evaluation, consultation or advice given by or on behalf of you or any insured; or

    ii)    in experimental data or the insured's interpretation of that data.

b)    The reporting of or reliance upon any such test, evaluation, consulting or advice. . . .

(Policy at 12-13.)

The claims in paragraph 12(c) to (e) of 3M's complaint attacked ITI's testing and

demonstration of 3M Tape in video, internet, and comparative advertising for Frog Tape.

In paragraph 12(c) 3M asserted that ITI's advertisements "do not accurately depict 3M

Tape under . . . any test protocol sufficiently reliable or scientific to support ITI's

claims." That is, 3M argued that either ITI's test was defective or their interpretation of

that test was defective. In paragraph 12(d), 3M contended that the statements in ITI's

advertising were "false and misleading because in fact the same pressure is not applied to

all depicted tapes" again claiming that ITI's test or reliance on their test was erroneous.

In paragraph 12(e) 3M stated that "ITI test conditions are not sufficiently reliable or

comparable." Because in each of these claims, 3M alleged an "error, omission, defect or

deficiency" in ITI's testing (Policy at 12), the claims fall within the "defects or errors in

testing" exclusion of the policy.

In paragraph 13, 3M asserted that "ITI has made other claims about the

companies' tapes that are incorrect and unsubstantiated." (3M Compl. ¶ 13.) When

- 10 -

asked to describe the allegations that supported this claim, 3M pointed to evaluations that were "not representative" (3M's Answer to Interrog. 14(a)), and to tests including side-by-side comparisons (*id.* 14(c)) and residue-measurement (*id.* 14(d-e)) that 3M alleged produced erroneous results.  Finally, 3M asserted that the "tape widths that ITI claims . . . are overstated and thus false and misleading." (*Id.* 14(f).)   An unintentional[5] overstatement of the tape's width is either the result of a failure to test or a defective test. Therefore, the "defects or errors in testing" exclusion also excludes the claims in paragraph 13 of 3M's complaint.

In sum, the Court concludes that each of 3M's claims that does not fall within the "knowledge of falsity" exclusion falls within the "defects or errors in testing" exclusion. *See also AMCO I*, 692 F. Supp. 2d at 1067-68.

### 3.      "Failure to Conform" Exclusion

Some of 3M's claims also fall within the "failure to conform" exclusion.  The exclusion eliminates a duty to defend arising from the "failure of goods, products, or services to conform with any statement of quality or performance made in your 'advertisement.'" (Policy at 10.)

In its Answer to Interrogatory 14, 3M alleged:

d.      Despite ITI's claims that Frog Tape is "clean release," it in fact leaves a residue.

e.      Despite ITI's claims that Frog Tape is UV-resistant," it in fact leaves a residue behind upon removal after exposure to UV rays.

---

[5] If 3M was alleging an intentional overstatement of the tape's width, coverage of the claim would be excluded by the "knowledge of falsity" exclusion.  *See* Part II.A.1, *supra*.

  f.  The tape widths that ITI claims for Frog Tape are overstated and thus false and misleading.

(3M's Answer to Interrog. 14.) Each of these allegations arises "out of the failure of [ITI's] goods, products or services to conform with" a "statement of quality or performance" made in its advertisements – conduct that is explicitly excluded by the "failure to conform" exclusion of the Policy. (Policy at 10.)[6]

  The Court concludes that all of the allegations found in 3M's complaint that do not fall within the "knowledge of falsity" exclusion fall within the "defects or errors in testing" exclusion and the "failure to conform" exclusion.[7] Because the policy does not cover any of 3M's underlying claims, the Court concludes that AMCO had no duty to defend ITI. It will, therefore, grant AMCO's motion for summary judgment.

## III. ITI'S MOTION FOR SUMMARY JUDGMENT

  ITI argues that it is entitled to summary judgment because the Eighth Circuit found that AMCO had a duty to defend and because AMCO breached its duty. The Eighth Circuit, however, did not find that AMCO had a duty to defend. The Eighth Circuit panel merely concluded that 3M had alleged at least one claim that fell outside the "knowledge of falsity" exclusion, and it remanded the case for further proceedings

---

[6] Although ITI argued at the hearing that the width of the tape is not a "quality" of the product, the Court rejects this view. Indeed, the Oxford English Dictionary defines "quality" with "reference to a thing" as "an attribute, property; a special feature or characteristic." (Online ed. 2012)

[7] Specifically, the Court finds that paragraphs 12(a-b), and 13 (as defined in 3M's Answer to Interrogatory 14(a)) are excluded by the "knowledge of falsity" exclusion; paragraphs 12(c-e), and 13 (as defined in 3M's Answer to Interrogatory 14(b-f)) are excluded by the "defects or errors in testing" exclusion. The Court finds that paragraph 13 (as defined in 3M's Answer to Interrogatory 14(d-f)) is also excluded by the "failure to conform" exclusion.

consistent with its opinion.  *AMCO II*, 648 F.3d at 883.  Because the Court has already determined based on the applicability of other exclusions that AMCO has no duty to defend (*see* Part II, *supra*), it will deny ITI's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     AMCO Insurance Company's Motion for Summary Judgment [Docket No. 70] is **GRANTED**;

2.     Inspired Technologies, Inc.'s Motion for Summary Judgment [Docket No. 86] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 25, 2012                          ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                             United States District Judge